## ELFELT v. HART.

*(Circuit Court, D. Minnesota. February, 1880.)*

CONTRACT—FRAUD—EQUITABLE RELIEF.—It is not always necessary for the injured party, even when fraud taints the contract, to rescind it in order to resist its full operation. He may permit the contract to be amended so as to conform to fair dealing, and if, under the pleadings and the relief prayed, a court of chancery can enter a decree which would be just and fair, and in accordance with equity, it will do so.

Action removed from state court, and heard, without change of pleadings, by consent.

*Gilman & Clough*, for plaintiff.

*Smith & Egan*, for defendant.

NELSON, J. The plaintiff brings this action to compel the

strict performance of the following agreement, alleging performance on his part and refusal by the defendant:

"CONTRACT.

"PHILADELPHIA, December 24, 1878.

"This is to certify that I have agreed and will, upon receipt of mortgage for $2,000, (two thousand dollars,) with note, payable in three years, with interest at 6 per cent., payable semi-annually—the security of the above to be satisfactory—I will then give Abram S. Elfelt and Susan C. Elfelt a satisfaction of a mortgage dated July 20, 1876, of $4,000, on the following described property, being a part of lot four, (4,) section twelve, (12,) township twenty-eight, (28,) range twenty-three, (23,) Ramsey county, Minnesota.

"ELEAZAR HART,<br>"or ELL HART.

"Witness: F. A. HOYT.'

The defendant, in his answer, charges the plaintiff with fraud and misrepresentation in procuring the agreement, and avers that he was intentionally misled by the plaintiff in regard to the value of the property upon which he held the mortgage, and which was agreed to be released and satisfied, and that the plaintiff intentionally concealed facts in reference to a contemplated sale of the property mortgaged, which was partially completed; and that these fraudulent practices of the plaintiff induced him to sign the agreement, which he alleges is void and of no binding force.

This is the substance of the answer, to which a special reply is interposed, disclaiming the fraud charged.

The facts are these: The defendant held the note of the plaintiff for $4,000, with interest at 6 per cent., payable semi-annually, executed July 20, 1876, payable three years after date, and secured by a mortgage upon property described as follows, and denominated the "Cave property," to-wit: Beginning at a point on the north boundary line of lot numbered four, (4,) of section numbered twelve, (12,) in town numbered twenty-eight, (28,) of range numbered twenty-three, distant six hundred and five and 54-100 feet west from

the north-east corner of said lot; thence south three hundred and sixty feet to the west boundary of land of C. D. Elfelt; thence west, along said Elfelt's north boundary line, one hundred seventy-nine and 36-100 feet to his north-west corner; thence south, along the said C. D. Elfelt's west boundary line, to the Mississippi river; thence south-westerly up said river to the south-west corner of said lot four, (4;) thence north to the north-westerly corner of said lot four, (4;) thence east to the place of beginning—containing nineteen and one-half (19½) acres of land, more or less.

On December 11, 1878, the plaintiff entered into a contract for the sale of the mortgaged property to the St. Paul & Sioux City Railroad Company at the agreed sum of $12,250 —$1,000 cash, and the residue payable in 90 days—the railroad company reserving the right to apply such an amount of the purchase money as may be necessary to pay all mortgage or other liens upon the property, and all taxes assessed thereon, save and except the taxes for 1878, which the railroad company were to pay. The amount of purchase money thus reserved would embrace the defendant's mortgage—amounting, principal and interest, at the date of the contract to about $4,580—and pay the taxes (some $900 or $1,200) then delinquent. The plaintiff also received upon his contract, in addition to the $1,000 therein provided, $2,000 in cash, upon which, as he says, interest was to be paid by him, at the rate of 10 per cent., until the balance of the purchase price was due.

The plaintiff, within 10 days after the sale of the property was agreed upon, went to Philadelphia and called upon the defendant, about December 22, 1878, for the purpose of making some arrangement in reference to the mortgage.

It appears the defendant had been alarmed about the delinquent taxes upon the property, and its forfeiture to the state for non-payment, and had telegraphed the plaintiff about them in October, a few weeks previous to the sale of the land by him, and at this meeting the plaintiff complained that the defendant was unnecessarily exercised in regard to the taxes, and then made a proposition to him for settlement, and at a

subsequent interview attempted to obtain the defendant's consent to a compromise which, in substance, was that the plaintiff would pay $2,000 on the mortgage, if he could raise it or borrow it, and give a new note for $2,000, payable in three years, giving a satisfactory security for the same by mortgage; and the defendant, in consideration therefor, should waive all accrued interest, and release the mortgage he then held from the property embraced in it, urging that on account of his financial condition he could make no better proposition, stating that "the property is all I have that I can use for the purpose of paying my indebtedness." On a subsequent meeting the plaintiff reiterated his former statement, and told the defendant "that in times like these I did not think I was asking too much to have the whole interest thrown off." The plaintiff also told the defendant that his ability to carry out the offer made to pay $2,000 depended upon his ability to raise or borrow the money from a friend. The plaintiff finally induced the defendant to accept the proposition, and immediately went out to raise or borrow the money. He had in his possession a draft for $2,000, and, proceeding to the office of Messrs. Young, Smythe, Field & Co., he exchanged his draft for their check on a Philadelphia bank, and, returning to the defendant, stated that he had borrowed the money ($2,000) from a friend, and the agreement above set forth was executed by the defendant, and the $2,000 check paid over by plaintiff. After obtaining the agreement to release the mortgage, the plaintiff, in his evidence, says: "I told the brother of Mr. E. Hart that I had already sold the property, and in reply to his question, why I had not told Mr. E. Hart, I answered I knew human nature too well; that, if I had done so, Mr. E. Hart would certainly not have made any reduction in interest."

The plaintiff, when he went to Philadelphia, obtained a statement of the amount of delinquent taxes, and, at the first interview, when the defendant said he was worried about the taxes, asked him "if, at the time he telegraphed about the taxes, he (plaintiff) had offered the property in payment of the mortgage, whether he would have accepted it," and re-

ceived a negative answer from the defendant, who said he could not afford to. The plaintiff, as he says, made the inquiry for the purpose of drawing out the defendant and ascertaining how much he needed the money, and what he could accomplish in the way of having the interest deducted. The defendant was exercised about losing the property on account of unpaid taxes, and the plaintiff exhibited to him the tax statements, evidently for the purpose of increasing his anxiety, and repeatedly told him he could not pay the interest. And he withheld from him the information that the property was already sold, because, as he says, "I did not wish to tell him. If I had, he certainly would not have been disposed to deduct the interest, and that was my only reason." He also told him "that the property had passed to the state, and could only be redeemed by him or myself."

The defendant received the $2,000, signed the agreement, and on the next day discovered that the property had been sold. When the plaintiff came to obtain the release or give a plat of the property, to be embraced in the new mortgage, the defendant declined to carry out the agreement, saying that he had been deceived and misled; but he made no offer to restore the $2,000.

These are the principal facts as they appear chiefly from the plaintiff's testimony. Leaving out the testimony introduced by the defendant, and examining the case upon the plaintiff's evidence, I do not think he is entitled, in equity, to a strict performance of the agreement by the defendant.

It is impossible to read the plaintiff's testimony without arriving at the conclusion that he desired to make a compromise to his own advantage, without putting the defendant upon the same level, and not only concealed facts which, if known, would, in his own opinion, have influenced the defendant's action, but also induced him to believe that no redemption of the property for non-payment of taxes could be made from the state by any one but the defendant and himself, when, at the time, the property had been sold, and, by the terms of the sale, the railroad company were to reserve from the purchase price enough to pay taxes and redeem the prop-

erly. Equity will not uphold such action, and no advantage can be obtained by such conduct.

While the counsel for plaintiff does not concede this, in terms, yet he urges that the defendant, having retained the $2,000 received from the plaintiff under the contract, has affirmed it, and cannot, without placing the plaintiff in the position he occupied before the agreement was entered into, avail himself of facts which show that he was over-reached and deceived, and that defendant cannot rescind the contract and retain the $2,000 paid by the plaintiff, and, having retained it, has elected to affirm and abide by the contract.

The general doctrine is well stated that the party who has been induced to enter into a contract by fraud may either rescind or affirm it. If he rescinds, and has received something of value under the contract, he must restore the same to the other party. But it is not always necessary for the injured party, even where fraud taints a contract, to rescind it in order to resist its full operation. He may permit the contract to be amended so as to conform to fair dealing, and if, under the pleadings and the relief prayed, a court of chancery can enter a decree which would be just and fair, and in accordance with equity, it will do so. 2 Paige, 390; 1 Pet. 383.

The defendant had no knowledge of the sale of the property. He was anxious about the security of his loan, upon which no interest had been paid for over two years, and the land mortgaged forfeited to the state for non-payment of delinquent taxes. The plaintiff, while quieting his feelings about the taxes, was still making an effort to obtain a compromise with the defendant, and concealed information of the *status* of the property, and indirectly induced the defendant, through fear of loss, to consent to the compromise, while fair dealing required a frank statement from the plaintiff, so that the defendant would not be misled.

I think the defendant is entitled to the protection of the court and relief against the conclusive operation of the agree-

ment, so far as it had the effect to remit the interest which had accrued upon the loan.

The defendant accepted the $2,000, and now retains it. There is no reasonable objection to the mortgage security tendered for $2,000, and this is the correct test, in my opinion, of "satisfactory security" mentioned in this agreement. The only matter really in dispute is the interest on the sum of $4,000 up to the date of the agreement, December 24, 1878; and the plaintiff has executed the new note and mortgage for $2,000, drawing interest at 6 per cent. from December 24, 1878, bearing date April 24, 1879, and the same is now tendered, in court, to the defendant. The court has the subject completely before it—to enable a final determination of the case—and, upon full consideration, has come to the conclusion that a decree should be entered in the case in favor of the plaintiff conditionally. It is therefore ordered, that a decree be entered adjudging that the defendant, upon the payment of the sum of $700 by the plaintiff—which is the amount of interest upon the original loan of $4,000, computed to the date of the new agreement, and the interest upon the $2,000 note tendered, up to December 24, 1879—execute and deliver a release and satisfaction of the $4,000 mortgage; *provided*, that the property described in the new mortgage is free from all encumbrances, including taxes, and the title in the grantors.